

18-2198 **BPG**

# IN THE UNITED STATES COURT FOR THE
# DISTRICT OF MARYLAND
# NORTHERN DIVISION
# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

FILED ___ ENTERED
LOGGED ___ RECEIVED

AUG 14 2018

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

I, Brian Pruitt, being first duly sworn, hereby depose and state the following:

## A. Background and Experience

1. I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations (HSI),[1] and have been so since October 2008. Your affiant is currently assigned to the Resident Agent in Charge, Ocean City, Maryland.

2. Your affiant is a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the United States who is empowered by law to conduct investigations of and make arrests for offenses enumerated in Title 21, United States Code, specifically, the federal Controlled Substances Act (CSA). As part of my employment with HSI, I attended the Criminal Investigator Training Program (CITP), a twelve-week basic program for all federal criminal investigators held at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia. Additionally, I attended Immigration & Customs Enforcement Special Agent Training (ICE SAT), an eleven-week training program held at FLETC. During both of these courses, blocks of instruction were given on a variety of subjects including, among others: basic investigative techniques; federal controlled substances laws, types of controlled substances, and recognition of such substances; methods of manufacture for controlled substances; transportation across international borders of such substances; distribution and sale of such substances; money laundering techniques; electronic and physical surveillance techniques; and the application of constitutional law.

---

[1] In 2003, the legacy United States Customs Service was incorporated into the DHS as U.S. Immigration & Customs Enforcement (ICE). In 2010, due to expanding and changing missions, ICE once more underwent a re-organization. This new agency is referred to as Homeland Security Investigations (HSI).

Case 1:18-mj-02198-BPG Document 1-1 Filed 08/10/18 Page 2 of 9



3. Your affiant has received specialized training in the investigation of large-scale drug organizations. Your affiant also received instruction in surveillance techniques, use of Title Three intercepts (wire-taps) and electronic listening devices (in accordance with all applicable laws governing the operations of surveillance equipment), use of informants, and undercover operations. I have conducted and participated in investigations where various methods have been used by large scale drug traffickers to smuggle, or introduce, controlled substances into the United States and the State of Maryland. Such methods have included the use of commercial airplanes, private planes, large commercial maritime vessels, and small private boats. As a result of my training and experience, and interactions with other drug investigators, I have become knowledgeable with the distribution and trafficking methods employed by drug traffickers to smuggle, import, safeguard, store, transport, and distribute drugs, and to collect and conceal drug-related proceeds. I have also participated in investigations utilizing both federal and state Title Three electronic intercepts. Your affiant has led and participated in numerous large-scale drug conspiracy investigations, both domestic and international in nature, and is familiar with the operations of these types of criminal organizations.

4. The facts set forth in this affidavit are based on my own personal knowledge, knowledge obtained from oral and written reports made by other law enforcement officers, physical surveillance, interviews, information subpoenaed and public records, database checks, phone analyses, and information gained through my training and experience. Since this affidavit is for a limited purpose, I have not included every fact I know about this investigation. I have set forth only those facts necessary to establish a foundation for the requested warrant.

2



**B.     Probable Cause**

5.     On April 18, 2018, members of the Wicomico County Narcotics Task Force (WINTF) and the Dorchester County Narcotics Task Force (DCNTF) conducted an enforcement operation targeting **Takii SMITH**. DCNTF had been monitoring the activities of **SMITH** and believed he was traveling to Delaware to acquire an unknown amount of cocaine. Members of DCNTF conducted mobile surveillance of **SMITH** as he traveled to northern Delaware, where he was observed meeting with unknown persons in what investigators believed to be a large-scale drug transaction. Investigators continued surveillance of **SMITH** as he returned to Maryland.

6.     At approximately 1252 hours, Trooper First Class (Tfc.) Mazet of the Maryland State Police (MSP) Salisbury Barrack conducted a traffic stop on **SMITH**'s 2013 Dodge Ram, bearing Maryland registration 3CD0039, in the area of Eastbound Line Road and Melson Road, Delmar, Wicomico County, Maryland, for minor traffic violations. Tfc. Mazet identified the driver as **SMITH** by a Maryland driver's license he provided. During this contact with **SMITH**, Tfc. Mazet observed that **SMITH** was nervous and displaying other criminal indicators. Based on these observations, and information he had received from investigators detailing **SMITH**'s drug distribution activities, Tfc. Mazet requested a K-9 scan of the vehicle.

7.     Deputy First Class (Dfc.) Bowden and his K-9 partner Blech responded to the scene to conduct a free air sniff of the vehicle. Dfc. Bowden made contact with **SMITH** and explained the presence of the K-9. **SMITH** looked at Dfc. Bowden and blurted out, "No." **SMITH** placed his vehicle in drive and fled from the traffic stop. Due to the direction **SMITH** was traveling prior to the traffic stop, law enforcement believed **SMITH** was traveling to 31345 Carioca Road, Delmar, Maryland. While the traffic stop was being conducted by members of MSP, Det. Pauley

and Det. Pizzaia responded to the intersection of Carioca and Rum Ridge Road and waited for further information from members of law enforcement.

8.     Several minutes later, Det. Pizzaia was advised that **SMITH** fled from a traffic stop and was traveling at a high rate of speed on Rum Ridge Road towards Det. Pizzaia's location. Approximately one minute later, Det. Pauley and Det. Pizzaia observed **SMITH**'s vehicle traveling towards Det. Pizzaia's location at a high rate of speed. Det. Pizzaia then observed **SMITH** attempt to slow his vehicle down and turn onto Carioca Road. **SMITH** then turned back onto Rum Ridge Road and traveled towards Williams Mill Pond Road. Det. Pizzaia observed **SMITH** being pursued by marked MSP vehicles, which had their emergency equipment activated. Det. Pizzaia observed **SMITH** turn onto Williams Mill Pond Road and travel towards Stage Road. Det. Pizzaia was able to follow **SMITH** and members of MSP at a safe distance. Prior to the intersection of Stage Road, Det. Pizzaia observed **SMITH** leave the roadway and began traveling through a farm field going towards Gordy Mill Road. Det. Pizzaia was able to follow **SMITH** through the farm field until reaching Gordy Mill Road. Det. Pizzaia observed **SMITH** turn onto Gordy Mill Road traveling back towards Rum Ridge Road. Det. Pizzaia was able to communicate with members of MSP via radio and advise them of **SMITH**'s location. Det. Pizzaia moved off the roadway to allow marked units to pursue **SMITH**. Det. Pizzaia observed **SMITH** travel towards Rum Ridge Road. Det. Pizzaia observed **SMITH** turn onto Rum Ridge Road and travel back towards Carioca Road. Prior to Carioca Road, Det. Pizzaia observed **SMITH** leave the roadway again and began traveling through a farmer's property located at 8740 Rum Ridge Road, Delmar, Maryland 21875, in attempt to flee from law enforcement. Det. Pizzaia was able to follow **SMITH** and observed **SMITH**'s vehicle become disabled after attempting to go through a large



drainage ditch on the property. Det. Pizzaia exited his unmarked vehicle and ordered **SMITH** out of his vehicle. **SMITH** exited his vehicle and was detained without further incident.

9. At approximately 1320 hours, Det. Pizzaia was contacted by members of the Wicomico County Sheriff's Office. Members of the Wicomico County Sheriff's Office stated that the resident of 30765 Gordy Mill Road, Delmar, Maryland, advised them that she had located a package containing what she believed to be drugs at the edge of her property. Det. Pizzaia responded to the residence and made contact with the complainant identified as Linda Hickman. Hickman stated that during the afternoon of April 18, 2018, she walked her trash can to the end of her driveway for pick up. Hickman stated that she then went back inside her residence. Hickman stated that several minutes later, while she was inside the residence, she began to hear police sirens that sounded as if they were coming from behind her residence, which would be odd given that there are farm fields located behind her residence. Hickman stated that she then heard the police go by her residence with lights and sirens on. Hickman stated that she then walked out to the mailbox to retrieve her mail. While outside, Hickman observed a brown package that she believed was a phone book located to left of her driveway, approximately 10 yards off the roadway. Hickman advised she observed the package to be in a vacuum sealed bag. When Hickman turned the object over, she observed black tape on the back side of the object. She thought this was suspicious and suspected the package could be drugs. Hickman stated she placed the object on the ground near a tree and then contacted the Wicomico County Sheriff's Office. Hickman stated that from the time she took the trash out to the time she retrieved the mail only about fifteen minutes had elapsed. Hickman stated that she is ninety- nine percent certain the package was not there when she took the trash out. Hickman subsequently directed investigators to the location where she placed the package. Through his training, knowledge, and experience, Det. Pizzaia believed

that the package contained cocaine. Det. Pizzaia seized the suspected cocaine and transported it to the MSP Salisbury Barrack for further processing. Det. Pizzaia obtained a preliminary weight of 1282.8 grams for the suspected cocaine. During the pursuit, **SMITH** passed the residence located at 39765 Gordy Mill Road, Delmar, Maryland.

10. On April 18, 2018 at 1520 hours, Det. Pizzaia was contacted by MSP. MSP advised that an individual residing near Gordy Mill Road in Delmar, Maryland, reported locating a suspicious package on the side of the road that appeared to be illegal drugs. Det. Pizzaia responded to the location and met with the individual, who pointed out the suspicious package. The package was located just off the roadway. Det. Pizzaia determined the package was identical to the brick of suspected cocaine that was recovered previously at 39765 Gordy Mill Road. During the pursuit of **SMITH**, he was observed passing this location. Det. Pizzaia seized the suspected cocaine and obtained a preliminary weight of 1052.1 grams including packaging.

11. Both suspected bricks of cocaine were wrapped numerous times in brown tape and formed in the shape of a brick resembling a large book. Det. Pizzaia and your affiant know through training and experience that this manner of packaging is consistent with the way that kilogram quantities of cocaine are packaged. Det. Pizzaia also observed that both bricks of suspected cocaine had a small V-shaped notch cut into the side of the tape which was sealed closed with black tape. Det. Pizzaia observed that by opening this small notch he could see the white powdery substance and smell the strong odor that is associated with large quantities of cocaine. Det. Pizzaia and your affiant know through training and experience what cocaine looks and smells like, and also know that large scale drug dealers often inspect or test the cocaine by cutting a small notch in the package to physically observe the cocaine (to avoid being ripped off).

12. The bricks of suspected cocaine were submitted to the MSP Forensic Crime Lab for testing. Both bricks of cocaine tested positive as Cocaine Hydrochloride, weighing 1,003.62 grams and 1,005.83 grams, respectively.

13. On April 18, 2018, MSP Sgt. Todd Widdowson, responded to 31345 Carioca Road, Delmar, Maryland and met with the only occupant of the business, Dennis Jefferson. Sgt. Widdowson explained to Jefferson that he was there because **Takii SMITH** had been involved in a chase with the police and it appeared that **SMITH** may have been trying to come to that location. Jefferson stated that he knew **SMITH**, that **SMITH** frequented the shop, and that several vehicles had pulled up to the shop and quickly left just prior to Sgt. Widdowson's arrival. Jefferson explained that he rented the shop and was running a vehicle repair shop at the location.

14. Jefferson stated that he was currently working on a trailer that belonged to **SMITH**. Jefferson pointed to an open-car, hauler-type trailer that was attached to a black and gray Ford F-350. Sgt. Widdowson asked if there were any other vehicles at the shop that belonged to **SMITH**. Jefferson pointed Sgt. Widdowson to an enclosed trailer and reported that it belonged to **SMITH**. Sgt. Widdowson asked if there was anything in the trailer and Jefferson responded that it contained a race car and other items that went along with the race car. Jefferson stated that **SMITH** had recently purchased the car and that there was no engine in the car, just a shell. Sgt. Widdowson asked Jefferson if there were any drugs, large amounts of money, or weapons at the shop. Jefferson responded in the negative and said that investigators could look around if they wanted to. Sgt. Widdowson provided Jefferson with a MSP Consent to Search and Seize form, which he read aloud to Jefferson. Jefferson stated he had no questions about the form and signed it at approximately 1330 hours. A search of the building and curtilage was conducted and no items of evidentiary value were located. During the search of the building, however, Sgt. Widdowson



observed a cell phone lying on the counter in the shop. On the screen was a message banner reading, "I got stopped by the cops on 54." Maryland Route 54 is where **SMITH** was first stopped by police before he fled from officers. Jefferson told Sgt. Widdowson he was waiting on **SMITH** to bring him some parts for the trailer he was repairing. Dep. Bowden and his K-9 partner were requested to respond and perform an open air sniff of the enclosed trailer and F-350. The K-9 alerted positively for the presence of a Controlled Dangerous Substance with respect to both the F-350 and the enclosed trailer. As a result of the positive alert, both vehicles were seized and transported to the Wicomico County Narcotics Task Force. The open-car trailer that was attached to the F-350 was left on the property with Jefferson's approval. Both vehicles, the F-350 displaying Maryland registration 5BP8493 VIN 1FTWX33F4XEA03049 and the Freedom Trailers LLC enclosed trailer displaying Maryland registration 111848X and VIN 5WKBE2826F1031732, were recorded on the Consent to Search and Seize form and a copy of the form was left with Jefferson.

15. On April 19, 2018, Det. Pizzaia authored and executed a state search warrant on the Freedom Trailers LLC enclosed trailer displaying Maryland registration 111848X. A query of the Motor Vehicle Administrations (MVA) records revealed that this trailer was registered to **Takii Nikeya SMITH** at 1402 Stone Boundary Road, Cambridge, Maryland. During the execution of this warrant, investigators discovered a black bag containing a Sccy CPX-2 9mm semi-automatic handgun with a magazine loaded with 10 live rounds of ammunition, a **SMITH** and Wesson model 4053 .40 caliber handgun, and $347,000 USD, which was in vacuum sealed bags. A query of law enforcement databases revealed that **SMITH** has previous felony convictions prohibiting him from possessing firearms, including, but not limited to, a conviction on August 28, 2007 for CDS: Possession with Intent to Distribute in Maryland Circuit Court for Dorchester County, where

**SMITH** received a sentence of 15 years confinement, 10 years suspended. Based on my training, knowledge, and experience, I am also aware that the firearms that were seized from **SMITH**'s trailer are manufactured outside the state of Maryland, and therefore traveled in interstate commerce.

16. Therefore, based on the foregoing, it is your affiant's belief that there is probable cause to believe that **Takii Nikeya SMITH** did possess with the intent to distribute over 500 grams of cocaine HCL, in violation of Title 21 United States Code, Section 841 and did possess, while prohibited, a firearm in violation of Title 18 United States Code, Section 922(g).

I, Brian Pruitt, affirm under penalties of perjury that the facts and circumstances recounted in the foregoing affidavit are true and accurate to the best of my knowledge.

_____
Brian Pruitt
Special Agent
Homeland Security Investigations

Subscribed and sworn before me on August 10, 2018.

_____
The Hon. Beth P. Gesner
Chief United States Magistrate Judge

9